**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IAN TOD PETERS,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action File No.** |
| | : | |
| **v.** | : | |
| | : | |
| **FORSYTH COUNTY DEPUTY SHERIFF, GRACE C. JACKSON; FORSYTH COUNTY SHERIFF, RON FREEMAN; MARTINELLI INVESTIGATIONS, INC.; ROBIN MARTINELLI; DOUG MARTINELLI; TATUM HELMER WHITESELL; and WILLIAM WHITESELL,** | : | **Jury Trial Demand** |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

**COMES NOW**, Plaintiff, Ian Tod Peters ("Plaintiff"), by and through counsel undersigned, and hereby submits his Complaint against Defendants, Forsyth County Deputy Sheriff, Grace C. Jackson ("Jackson"); Forsyth County Sheriff, Ron Freeman ("Freeman"); Martinelli Investigations, Inc.; Robin Martinelli; Doug Martinelli; (Robin Martinelli, Doug Martinelli, and Martinelli Investigations, Inc. collectively referred to herein as "Martinelli"); Tatum Helmer Whitesell ("Helmer");

and William Whitesell ("Whitesell"), (Jackson, Freeman, Martinelli, Helmer and Whitesell collectively referred to herein as "Defendants"), and shows the Court the following:

## Introduction

**1.**

This is a civil rights action under 42 U.S.C. § 1983 and Georgia law for violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff was unlawfully stopped, arrested, detained, and prosecuted by Defendants for DUI based on fabricated allegations and false evidence. Despite exculpatory test results showing a 0.0 BAC and no controlled substances, Plaintiff was prosecuted until all charges were dismissed by the Forsyth County Solicitor through a Notice of No Accusation on February 27, 2025. Defendants' conduct violated clearly established constitutional rights, including freedom from unlawful seizure, false arrest, and malicious prosecution. Plaintiff seeks compensatory and punitive damages, as well as attorney’s fees under 42 U.S.C. § 1988.

## Parties

**2.**

Plaintiff is a United States citizen and a resident of the Northern District of Georgia.

**3.**

Jackson, is an individual, who was, at all times relevant herein, a Deputy Sheriff, employed by the Forsyth County Sheriff's Office, who acted within the scope of her employment by, and pursuant to, the policies and procedures of the Forsyth County Sheriff's Office. At all relevant times, Jackson acted under color of state law. Jackson may be served at the Forsyth County Sheriff's Office, 100 East Courthouse Square, Cumming, Georgia 30040.

**4.**

Freeman, is an individual, who was, at all times relevant herein, a Sheriff, elected and employed by the Forsyth County Sheriff's Office, who acted within the scope of his employment by, and pursuant to, the policies and procedures of the Forsyth County Sheriff's Office. At all relevant times, Jackson acted under color of state law. Freeman may be served at the Forsyth County Sheriff's Office, 100 East Courthouse Square, Cumming, Georgia 30040.

**5.**

Robin Martinelli is a Private Investigator at Martinelli Investigations, Inc. Robin Martinelli is also believed to be a former police officer, or passes herself off as a police officer to the general public, and acted jointly with Jackson and Freeman under color of law, by virtue of conspiracy and joint participation. Martinelli's

principal office address is 1495 Buford Highway NE, Suite 110, Suwanee, Georgia 30024. Robin may be served at the same address.

**6.**

Doug Martinelli is a Private Investigator at Martinelli Investigations, Inc. Doug Martinelli is believed to be an off duty police officer, or passes himself off as a police officer, and acted jointly with Jackson and Freeman under color of law, by virtue of conspiracy and joint participation. Martinelli's principal office address is 1495 Buford Highway NE, Suite 110, Suwanee, Georgia 30024. Doug Martinelli may be served at the same address.

**7.**

Martinelli Investigations, Inc. is a private investigation company that is owned and operated by Robin and Doug Martinelli. Upon information and belief, it may be served via Robin Martinelli, its Registered Agent, at the company's principal office address, 1495 Buford Highway NE, Suite 110, Suwanee, Georgia 30024.

**8.**

Helmer is Plaintiff's ex-girlfriend and the mother of Plaintiff's twin daughters. Upon information and belief, Helmer resides, and may be served at, 6610 Vickery Creek Rd, Cumming, Georgia 30040.

**9.**

Whitesell is the husband of Helmer and a stepfather to Plaintiff's twin daughters. Upon information and belief, Whitesell resides, and may be served at, 6610 Vickery Creek Rd. Cumming, Georgia 30040.

## Jurisdiction and Venue

**10.**

Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331.

**11.**

Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district as Defendants reside, and/or do business, and/or exist, within the Northern District of Georgia.

## Factual Allegations

### Plaintiff and Helmer Share Physical and Legal Custody of Twin Daughters

**12.**

Plaintiff and Helmer share physical and legal custody of their twin daughters.

**13.**

Helmer and her husband, Whitesell, have repeatedly attempted to interfere with Plaintiff's custodial rights by asserting false accusations made against him.

**14.**

Over the past twelve (12) years and since the birth of the twin daughters, Helmer and Whitesell have repeatedly, falsely accused Plaintiff of multiple crimes and allegations of abuse; however, all such allegations have been investigated and determined to be unfounded.

**15.**

For example, Helmer and Whitesell have filed at least six (6) false police reports, as well as filing at least two (2) false reports with Children's Healthcare of Atlanta (CHOA), the child abuse investigative unit, and through false allegations, initiated three (3) DFCS investigations, and have made at least four (4) false allegations to the minor children's pediatrician. All allegations are attempts to unhinge his custodial rights and to weaponize the legal system and law enforcement community to accomplish this goal.

**16.**

All of Helmer and Whitesell's allegations against Plaintiff have been investigated and found to be unsubstantiated by various government agencies, including but not limited to, Children's Healthcare of Atlanta ("CHOA") the child abuse investigative unit, the Division of Family and Child Services ("DFCS"), the Dunwoody Police Department, the Forsyth County Sheriff's Department and the two

time Dekalb Superior Court appointed Guardian ad Litem (GAL), Leslie Gresham, Esq.

**17.**

From 2014 to present, Helmer has falsely accused Plaintiff of approximately 25 different violations to a myriad of other entities - - all of which were unfounded and unsubstantiated.

**Helmer and Whitesell Hired Martinelli**

**18.**

On or about September 20, 2024, Helmer and Whitesell hired Martinelli, as well as their employees and agents, to investigate Plaintiff and to attempt to have Plaintiff arrested on a DUI charge in an attempt to modify or take custody away from the Plaintiff and his twin daughters. Martinelli Retainer Agreement, **Exhibit A.**

**19.**

At all times relevant, Martinelli acted as the agents of Helmer and Whitesell.

**20.**

Helmer and Whitesell retained and directed Martinelli to illegally place a GPS tracking device on Plaintiff's vehicle, conduct surveillance of Plaintiff, and to communicate false information to law enforcement, and to call 911 for the purpose of having Plaintiff arrested on fabricated charges in order to modify custody.

**21.**

Martinelli acted within the scope of that agency relationship and under the control and direction of Helmer and Whitesell. Accordingly, under principles of Georgia law, Helmer and Whitesell are vicariously liable for all wrongful acts committed by Martinelli in furtherance of false arrest, imprisonment, malicious prosecution, conspiracy and unlawful objectives.

**22.**

Martinelli, their employees and agents, illegally placed a GPS tracking device on Plaintiff's vehicle to track his daily travels by entering upon his private property and committing a trespass.

**23.**

Martinelli, their employees and agents, falsely accused Plaintiff of frequently visiting alcohol-providing establishments in an effort to create an alcohol use issue for a new yet unfiled custody action and in order to have him arrested, to facilitate and support an alteration, desired by Helmer and Whitesell, of the joint custody arrangement pertaining to Plaintiff's daughters.

**Helmer, Whitesell and Martinelli Initiated the False Arrest of Plaintiff for DUI to the Forsyth County Sheriff's Department**

**24.**

On November 2, 2024, Plaintiff had custody of his daughters and brought them to a youth football game, as the girls were cheerleaders for one of the teams.

**25.**

While waiting at a restaurant for pizzas to be made for the team party at one of the other cheerleader parents' homes, Helmer, Whitesell and Martinelli conspired among themselves to falsely accuse Plaintiff of being DUI and alleged such to Jackson, so that Jackson would stop and arrest Plaintiff.

**26.**

Robin Martinelli made multiple 911 phone calls, which were recorded and obtained through a Forsyth open records request, wherein she falsely reported to the Forsyth County Sheriff's Department, and then eventually Jackson stating:

- She was a private investigator and the owner of Martinelli Investigations, and that they were on a domestic case.
- That Plaintiff had his twin girls and is going to drink and drive thereby posing harm to his daughters.
- Martinelli had seen Plaintiff "drinking all day."

- Plaintiff would be "drinking again in a couple of hours."
- Plaintiff had been "drinking for the past hour."
- Martinelli knew "the route he is going to be taking."
- Robin Martinelli's "husband is a police officer and also a private investigator and watching him drink right now."
- Robin Martinelli mentions her past employment as a Forsyth Deputy, "I worked for you 30 years ago." We are unsure if she worked for the Forsyth Sheriffs department.

**27.**

Robin Martinelli then reported to Sgt. Boggus, also with the Forsyth County Sheriff's Department, stating, "we are not in a custody battle, but this is the fourth weekend that we have filmed (Plaintiff) drinking and driving with his girls. So he is now drinking again, and although I don't know how much he has drank, my husband is a police officer and also a private investigator, he is in there watching him drink . . . . we have five investigators in there watching him drink."

**28.**

Robin Martinelli also states "I don't know how you want me to handle dialing 911 when we see him put the girls in the car and drive. When the girls are in the car he drives 35 mph."

**29.**

Boggus advises Robin Martinelli to let them know how much Plaintiff had to drink and they would put a police officer on Plaintiff.

**30.**

Robin Martinelli states that the Plaintiff "will have the girls in the car, so just know the mother is like, we can be there in two seconds, he is not going to blow, he has done this before . . . I want you to know the family is right here to grab the girls if it happens. I will text you his name, his date of birth, social, the picture of the vehicle, and my number, and then as soon as everything happens, I'll call 911."

**31.**

Barely four days later, Helmer and Whitesell initiated a custody battle against Plaintiff because of their agent Martinell's false accusations and false arrest of Plaintiff by filing with the Superior Court of DeKalb County a Petition to Modify custody which shows their intent all along - - which was to falsely accuse Plaintiff of being an unfit father, have him falsely arrested for DUI with his children in the car, and to take custody away of his twin girls.

**32.**

Attached as **Exhibit B**, is a Petition for Modification of Child Custody which states, Plaintiff "was arrested for DUI of Alcohol in Forsyth County; Four (4) counts of Endangering a Child by DUI of Alcohol or Drugs, and Failure to Use Seatbelts."

**33.**

In that same proceeding, previously, Helmer admitted, under oath, that in hiring Martinelli, her purpose "was to get information to be able to have a change in circumstance so that I could go back to court to get a custody modification." (Deposition Tatum Whitesell, pg. 25, lines16-20.)

**34.**

Helmer also swore under oath that Martinelli called her just prior to Plaintiff's arrest stating, "He's been drinking heavily, and he's got four kids in the car.· I can't live with this. I'm having him pulled over, okay?" (Deposition Tatum Whitesell, pg. 26, lines10-12.)

**35.**

Helmer admitted authoring the stop by responding, "And I'm like, "Okay,· Okay.· Like, if that's what's going on, have him pulled over." (Deposition Tatum Whitesell, pg. 26, lines13-14.)

**36.**

Helmer stated that Martinelli told her just before the arrest, "He's been drinking all day. I can't live with myself, . . . The girls don't have seat belts on." (Deposition Tatum Whitesell, pg. 36, lines 3-7.)

**37.**

Helmer also stated that Deputy Jackson called her that night at 2:00 a.m. to check on the girls and stated "I pulled them over for a seat belt ticket because they were hanging out of the car. And when I pulled them over, I asked Mr. Peters 'Had you been drinking?' . . . I asked if he would do the blowing thing, and he refused it." (Deposition Tatum Whitesell, pg. 42, lines 16-20, pg. 43, lines 1-2.)

**Failure to Train Jackson**

**38.**

As of November 2, 2024, Jackson had little or no training for handling a roadside stop for DUI. She was not even certified or trained to use a breathalyzer device, which is likely why she never offered a breathalyzer at the stop.

**39.**

Previous to Plaintiff's stop on 11/2/2024, more than a year had passed since Jackson received 16 hours of training on Advanced Roadside Impaired Driving Enforcement (ARIDE), on October 1, 2024, and one hour of training on DUI Enforcement, on September 19, 2024.

**40.**

Before then, Jackson had received training back on December 22, 2022, i.e., 24 hours on DUI/DWI Detection and Standardized Field Sobriety Test.

**41.**

Her training records show no other training on DUI roadside or field testing.

**Jackson Arrested Plaintiff without Probable Cause at the Behest of Martinelli, Helmer and Whitesell**

**42.**

Jackson, despite not observing any crimes being committed by Plaintiff, took the false allegations of Martinelli, who were acting as agents on behalf of Helmer and Whitesell, to fabricate probable cause to pull Plaintiff over for the false reason of not wearing a seatbelt, in violation of the Fourth Amendment.

**43.**

Then, Jackson further used these false allegations of DUI in order to accuse Plaintiff of smelling like he was drunk, or that he was unsteady on his feet, so as to falsely need to administer a roadside DUI test. Jackson then falsely failed Plaintiff and arrested him in violation of the Fourth Amendment. (**Exhibit A**, Incident/ Investigation Report, Case #2024-110103, dated November 2, 2024.)

**Jackson's Arrest Report**

**44.**

In her arrest report, Jackson falsely described the stop, probable cause, collection of testimony, evidence and arrest.

**45.**

Jackson's arrest report recites multiple false statements from Martinelli, such as:

- Martinelli claiming Plaintiff was driving under the influence
- Robin Martinelli claiming she had surveilled Plaintiff all day
- Martinelli claiming Plaintiff had consumed "alcoholic beverages consistently throughout the day."
- Robin Martinelli and her husband having multiple photos and videos of Plaintiff drinking throughout the day.

**Plaintiff and His Passengers Left Giovanni's Pizza Parking with their Seatbelts on**

**46.**

Plaintiff and the four minors picked up the pizzas for the team party, and got into Plaintiff's SUV, a 2018 Chevrolet Tahoe, with tinted windows.

**47.**

Plaintiff is a Vice President for an insurance company, who, as an underwriter, always wears his seatbelt when driving, and moreover, his vehicle beeps when he or his passengers fail to wear their seatbelts.

**48.**

Plaintiff and all his minor passengers put on, and were wearing their seatbelts, as they were taught by their parents, and Plaintiff's vehicle was not beeping as he left Giovanni's Pizza parking area.

**49.**

Jackson starts her observation of Plaintiff and his vehicle on private property or the parking lot outside Giovanni's Pizza, which was more than a block away to her right, making it impossible for her to see inside the vehicle whether anyone was not wearing their seatbelt.

**50.**

Jackson was only there observing Plaintiff because of the false accusations by Martinelli.

**51.**

Jackson maintained continuous phone contact with Robin Martinelli, who was directing Jackson to the Plaintiff's vehicle.

**52.**

From the arrest report, Jackson's alleged violations of the seatbelt law only occurred on private property, and amounted to no violation of the law at all, so as to form probable cause.

**53.**

O.C.G.A. § 40-8-76.1(f) states that probable cause for violation of this Code section "shall be based solely upon a law enforcement officer's clear and unobstructed view of a person not restrained as required by this Code section."

**54.**

Thus, there was no probable cause to stop the Plaintiff for seatbelt violations as Jackson did not have a clear and unobstructed view, as required under Georgia Law. And, after Plaintiff passed by Jackson in the parking lot, all that Jackson could have observed was the rear of Plaintiff's vehicle with tinted windows on private property - - making it impossible to observe any alleged failure to use seatbelts as Plaitniff turned out of the private parking lot onto the highway.

**55.**

Despite already having Plaintiff under investiagion and suspicion of DUI, Jackson completely failed to follow her Department's policies and guidelines that she turn on her camera, to provide proof of the reasons for her stop.

**56.**

As Jackson pulled Plaintiff over, she made the admission that "the reason for the stop today is because you are not wearing a seatbelt okay, and I didn't see, I think one of the kids in the back may not have had theirs on either."

**57.**

Plaintiff responded that he had just taken his seatbelt off because of the stop.

**58.**

In contrast to the video recording where she was unsure, Jackson contradicts herself by writing up her report indicating definitively, "as I was parked on the side of the building, I observed Ian's vehicle pass me. When he passed, I observed a child in the rear seat not wearing a seatbelt as well as Ian not wearing his seatbelt. I followed the vehicle out of the plaza and as it made a left onto Post Road. I then conducted a traffic stop on the vehicle for these violations."

**59.**

And, with no probable cause at all, Jackson, out of the blue asks, "how much have you had to drink today, sir?" Only after the question does she state that "I can smell it on you, when did you have your last drink?"

**60.**

Regardless, Plaintiff and all four minors were wearing their seatbelts and when Jackson pulled them over, everyone in the car told Jackson that they were wearing their seatbelts.

**61.**

On November 2, 2024, through the early morning hours of November 3, 2024, AT&T cell phone records, obtained in the custody case, revealed Robin Martinelli and Helmer were in constant telephone and SMS text contact, there were 139 SMS text messages exchanged, and at least 34 phone calls calls exchanged between Helmer and Robin Martinelli, while Martinelli surveilled Plaintiff, in an attempt to have Plaintiff arrested for DUI.

**62.**

Martinelli provided false allegations to the Forsyth County Sheriff's Office, and Jackson, in order to have Plaintiff stopped for not wearing seatbelts, arrested for DUI, and child endangerment.

**63.**

Despite the absence of any genuine traffic violation or independent basis, Jackson detained Plaintiff and falsely reported that he exhibited bloodshot eyes, odor of alcohol, and failed field sobriety tests.

**64.**

Jackson falsely stopped Plaintiff for lack of seatbelts, an alleged DUI, and child endangerment, under false pretenses that Plaintiff and/or one of the children was not wearing their seatbelts. This was a lie created by Jackson to have probable cause to stop Plaintiff.

**65.**

Plaintiff and all the children were, in fact, wearing their seatbelts, and Jackson lied about this minor traffic violation to stop and test Plaintiff for the alleged DUI, for which Martinelli, Helmer, and Whitesell wanted Plaintiff arrested.

**66.**

Despite Jackson not having any probable cause for stopping Plaintiff, and/or lying about Plaintiff and the children not wearing their seatbelts, Plaintiff was stopped and pulled over in violation of his Constitutional rights.

**Jackson's Roadside Field Sobriety Tests**

**67.**

Jackson improperly administered a DUI field sobriety test, which Plaintiff was coerced into taking against his will, and then, Jackson falsely concluded that Plaintiff failed the tests.

**68.**

Jackson never offered Plaintiff a breathalyzer test despite it being readily available.

**69.**

Jackson could not have smelled alcohol on Plaintiff's breath or failed him on a field sobriety test because the objective evidence of his blood test conclusively showed his BAC at 0.0, making it impossible for Jackson to have probable cause to initiate any roadside stop, or in other words, she lied about all of the reasons for probable cause and arresting Plaintiff for DUI.

**70.**

When Jackson tested Plaintiff on the video, the evidence clearly shows no evidence of nystagmus, as his eyes follow her finger - - Jackson failed Plaintiff on this part of the test, despite a complete lack of any supporting evidence.

**71.**

Thus, all of the Defendants conspired in the false arrest, false imprisonment, and malicious prosecution of Plaintiff for alleged DUI, not wearing a seatbelt, and child endangerment, all in violation of federal and state laws.

**72.**

Plaintiff was arrested, handcuffed, placed in the back of the patrol car, transported to jail, booked, and placed into a cell, all in front of his minor children, their friends and family, to Plaintiff's humiliation and embarrassment, all for crimes he did not commit.

**Plaintiff was Held in Jail for Over 8 hours by Freeman's Policies**

**73.**

Plaintiff was only allowed to bond out after approximately eight hours in custody, but Jackson and Freeman acted according to an unconstitutional policy or custom to hold all accused DUI drivers for a minimum of 8 hours. Plaintiff posted a cash bond of $16,627.00 to be released.

**74.**

Plaintiff asked to be let go, but was told he would have to wait until he sobered up, or an 8 hour window of time. Even after Plaintiff requested a breathalyzer, Jackson and Freeman refused to give him one, knowing it might show him innocent of their false charges against him.

**<u>Plaintiff's Blood Alcohol Content (BAC) was 0.0</u>**

**75.**

At the station, Deputy Jackson coerced and forced Plaintiff to take a blood test for alcohol and drugs.

**76.**

Plaintiff submitted to a blood test administered by the Georgia Bureau of Investigation, which revealed a **blood alcohol content of 0.0 and no illegal substances.** The results of Plaintiff's blood test revealed his blood alcohol content to be 0.0 and entirely negative for any type of illegal drugs.

**77.**

Because of Martinelli and their agent's false witness and swearing against Plaintiff, Plaintiff was falsely arrested and accused of crimes he did not commit.

**78.**

Martinelli was hired and was acting as the agent of Helmer and Whitesell, in order to arrest Plaintiff for DUI - - with both of them hoping that the judicial system would then change the custody arrangement pertaining to Plaintiff's daughters.

**79.**

On November 6, 2024, four (4) days after Plaintiffs arrest, Helmer filed a petition for a modification of Custody in Dekalb County Superior Court, accusing

Plaintiff of all the false accusations that she had engineered, along with Whitesell and her agents, which clearly illustrate Helmer's motivation.

**80.**

Although the Forsyth County Solicitor received the GBI Blood results on 12/31/2024, Forsyth, in a fishing expedition, then sent Plaintiffs blood to toxicology for drug tests. These negative results were received by Forsyth on February 3, 2025.

**81.**

For almost four months, the Forsyth County Solicitor chose to pursue this case. And, despite having exculpatory evidence of a 0.0 Blood BAC on 12/31/2024 and a negative Toxicology report for illegal drugs, did not immediately dismiss the case.

**<u>Martinelli Provided False Evidence to the Forsyth County Solicitor</u>**

**82.**

Approximately five weeks after Plaintiff's arrest, Martinelli again abused the judicial process by requesting a meeting with the Forsyth Solicitor Investigator, Josh Patten.

**83.**

Martinelli later created and delivered a falsified "binder" of supposed drinking history to the Forsyth County Solicitor, containing inaccurate times, and locations (that Plaintiff had actually never visited), and manipulated photographs.

**84.**

During this meeting, Martinelli delivered a grossly inaccurate binder of information to the Forsyth Solicitor Investigator purporting to document Plaintiff's alleged pattern of alcohol consumption; however, Plaintiff had never been to several of the locations listed and the times/dates of the pictures do not match.

**85.**

The submission of the binder, despite its glaring factual inaccuracies, was an intentional act to reinforce the false allegations against Plaintiff, and to influence the prosecution with false and perjured testimony - - the binder was obtained by Plaintiff through an open records request.

**86.**

Because of the fallacies contained in the binder, as well as the influence of Martinelli, as former and current police officers, Martinelli improperly demanded and received a no plea deal assurance from the Forsyth County Solicitor, or in other words, "Do <u>not</u> dismiss or nolle pros any child endangerment without him pleading

both to the DUI within 60 days of arraignment. Must plead to at least one of them." (**Exhibit D**, Case Check Sheet (emphasis in original).)

**87.**

On November 2, 2024, Jackson falsely accused Plaintiff of driving while DUI and changed her testimony by falsely signing an Affidavit stating that Plaintiff was the only one not using a seat belt, and omitting her prior falsehood that the child was not using a seatbelt. (**Exhibit E.**)

**88.**

On February 27, 2025, all criminal charges against Plaintiff, based on the false testimony and evidence by these Defendants, were dismissed by the Forsyth County Solicitor in a Notice of No Accusation and pursuant to O.C.G.A. § 35-3-37." (**Exhibit F**.)

**89.**

As a direct result, Plaintiff suffered loss of liberty, humiliation in front of his children and the public, reputational harm, attorney's fees, costs of litigation, and severe emotional distress.

**90.**

Plaintiff has expended substantial funds for legal representation across multiple proceedings initiated by or stemming from Defendants' conduct.

**Qualified Immunity Does Not Apply**

**91.**

Qualified immunity does not shield Jackson and Freeman because their conduct violated clearly established Constitutional rights. No reasonable officer could believe that fabricating probable cause, falsifying arrest reports, or detaining an individual with a 0.0 BAC for eight hours were lawful acts.

**COUNT I**
**(False Arrest and Unlawful Seizure - 42 U.S.C. § 1983)**
**(Against Jackson, in her individual capacity)**

**92.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**93.**

Jackson, acting under color of state law, intentionally stopped, seized, and arrested Plaintiff without probable cause, in violation of the Fourth Amendment.

**94.**

No reasonable officer could have believed probable cause existed given Plaintiff's seatbelt was secured and the child's seatbelt was noted as fastened in Jackson's own report.

**95.**

The asserted seatbelt violations were fabricated by Jackson to initiate the traffic stop as desired by Martinelli, Helmer and Whitesell.

**96.**

Jackson committed perjury when she falsely stated under oath that she had probable cause to stop and arrest Plaintiff:

- for alleged seatbelt violations on public property;
- for the odor of alcohol on Plaintiff's breath;
- for Plaintiff slurring his words;
- for Plaintiff's eyes being bloodshot or glassy;
- for Plaintiff failing the roadside sobriety test; and
- for falsely concluding that Plaintiff was not safe to operate his vehicle.

**97.**

No reasonable officer could conclude probable cause existed when Plaintiff was compliant, his blood alcohol test was 0.0, and alleged indicia of intoxication were false.

**98.**

Jackson's conduct violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

**99.**

Plaintiff suffered loss of liberty, humiliation, and emotional distress.

**COUNT II**
**(Malicious Prosecution - 42 U.S.C. § 1983)**
**(Against Jackson, in her individual capacity)**

**100.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**101.**

Jackson instituted and continued criminal proceedings against Plaintiff without probable cause and with malice.

**102.**

The proceedings terminated in Plaintiff's favor when the Solicitor dismissed all charges on February 27, 2025, and pursuant to O.C.G.A. § 35-3-37, any criminal records regarding the case, and presumably false allegations, "shall be restricted pursuant to O.C.G.A. § 35-3-37(h)(2)(A)."

**103.**

Jackson's conduct violated Plaintiff's Fourth and Fourteenth Amendment rights.

**COUNT III**
**(Failure to Train/Supervisory Liability - 42 U.S.C. § 1983)**
**(Against Freeman, in his individual capacity)**

**104.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**105.**

Freeman was responsible for establishing training, policies, and supervision of deputies, including Jackson.

**106.**

The Forsyth County Sheriff's Office lacked adequate training, such as:

- Knowing there are more than four (4) factors to a roadside sobriety test;
- Knowing that a seatbelt violation has to occur on public not private property;
- Not to manufacture probable cause to stop suspected DUI motorists;
- requiring deputies to corroborate private reports with independent, lawful observations before conducting traffic stops;
- to properly conduct and document field sobriety tests; and
- to halt prosecutions when exculpatory results are received.

**107.**

Freeman tolerated his deputies, manufacturing probable cause to initiate traffic stops and investigate law-abiding motorists for DUI. Freeman's failure to discipline Jackson after other similar incidents demonstrates a "custom or policy" under Monell standards.

**108.**

Despite Plaintiff's BAC test result being 0.0, Freeman made no internal affairs investigation, practical remedial training, or discipline toward Jackson, so that his inaction and indifference amount to a tacit endorsement and deliberate indifference to Jackson's unconstitutional violations of Plaintiff's civil rights.

**109.**

Deputies, such as Jackson, were not trained to account for exculpatory evidence, and instead continued prosecutions without probable cause.

**110.**

On information and belief, Freeman was aware of other prior complaints and dismissed DUI prosecutions in Forsyth County, demonstrating that deputies routinely stopped motorists without probable cause in violation of the Fourth and Fourteenth Amendments.

**111.**

Despite this knowledge, Freeman took no corrective action, reflecting deliberate indifference to the Constitutional rights of citizens.

**112.**

Freeman's failure to train and supervise was the moving force behind Jackson's unlawful stop, arrest, and continuation of criminal charges against Plaintiff.

**113.**

Freeman, as Sheriff, was responsible for training and supervising deputies, including Jackson.

**114.**

Freeman knew that his Department's roadside stops and testing were deficient, allowing deputies, such as Jackson, to stop motorists in violation of the Fourth Amendment and without probable cause, as well as to arrest them without probable cause or reasonable suspicion of any crime having been committed.

**115.**

Freeman knew that his Department's roadside stops and testing apparatus and literature were prone to being inaccurate and yielding many false positives, so he

was indifferent to the rights of all citizens, including Plaintiff, to be free from illegal searches and seizures.

**116.**

Freeman knew his Department's roadside DUI testing policies and training were Constitutionally deficient as the training given to Jackson was nothing more than an educated guess or hunch that a motorist had committed a violation of the rules of the road, such that an innocent motorist, such as Plaintiff, could be subjectively pulled over without probable cause, detained and even arrested while passing an objective blood test with a BAC of 0.0 and negative toxicology test for illegal drugs.

**117.**

Freeman's goal was to increase fines and revenue for his Department through these unconstitutional DUI stops, so that financial motives outweighed the civil rights of all citizens, including Plaintiff.

**118.**

Freeman maintained inadequate training and supervision, which were customs, policies, or failures that directly caused Jackson's Constitutional violations of Plaintiff's Fourth Amendment rights.

**119.**

Freeman's deliberate indifference to his Department's inadequate training and supervision resulted in Plaintiff's unlawful arrest and detention.

**120.**

Freeman is liable, as Sheriff, for his failure to supervise or train the deputies who worked for him, such as Jackson, and for his policies or customs that contributed to the violation.

**121.**

As a direct result, Plaintiff suffered damages, including loss of liberty, emotional distress, and reputational harm.

**COUNT IV**
**(Unconstitutional Hold Policy - 42 U.S.C. § 1983)**
**(Against Jackson and Freeman)**
**122.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**123.**

Defendants held Plaitiff against his will for over eight hours, despite his having the ability to bond out and while exhibiting no signs of intoxication.

**124.**

Defendants unconstitutional hold policy held Plaintiff against his will in violation of his Constitutional rights.

**COUNT V**
**(Fabrication of Evidence - 42 U.S.C. § 1983)**
**(Against Jackson, Martinelli, Helmer, and Whitesell)**

**125.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**126.**

Defendants instituted and continued a criminal prosecution against Plaintiff without probable cause, and with malice. Despite this, the proceedings terminated in Plaintiff's favor.

**127.**

Defendants knowingly fabricated evidence, adopted allegations from off-duty police officers (Martinelli) who were biased and hired to get Plaintiff arrested, including utilizing false seatbelt allegations, false DUI indicia, and a falsified binder.

**128.**

Jackson adopted and relied on this fabricated evidence to justify the arrest and prosecution.

**129.**

This conduct violated Plaintiff's right to due process under the Fourteenth Amendment.

**130.**

Plaintiff suffered damages, including loss of liberty, humiliation, and attorney's fees.

**<u>COUNT VI</u>**
**(Conspiracy to Violate Civil Rights - 42 U.S.C. § 1983)**
**(Against All Defendants except Freeman)**

**131.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**132.**

Helmer, Whitesell, and Martinelli conspired with Jackson to deprive Plaintiff of his Constitutional rights - - overt acts included installing a GPS tracker, fabricating DUI allegations, falsifying 911 calls, falsifying arrest reports, while maintaining continuous phone contact with Jackson, and submitting a falsified binder to prosecutors.

**133.**

Helmer, Whitesell, and Martinelli entered into a retainer agreement:

- to surreptitiously attach a GPS tracker to Plaintiff's vehicle in an effort to track his whereabouts, which would be provided to the police in furtherance of malicious prosecution;

- to falsely create a dossier binder to be used as evidence against Plaintiff, purporting to detail his alleged crimes, and then provided it to the Solicitor to aid in Plaintiff's false arrest, imprisonment, and prosecution;
- to improperly influence the Solicitor in a no plea deal, so that Helmer would get full custody of the minor childrenf.

**134.**

Defendants committed overt acts in furtherance of the conspiracy, including:

- falsifying documents and testimony about Plaintiff's alleged drinking and intoxication;
- falsely reporting Plaintiff to 911 law enforcement under the guise of the Martinellis also being in law enforcement;
- fabricating evidence of Plaintiff allegedly not wearing a seatbelt;
- fabricating evidence of Plaintiff allegedly failing a roadside sobriety test; and
- creating a dossier binder that falsified evidence in an attempt to get Plaintiff convicted of crimes that he did not commit, all in violation of Federal and Georgia law.

**135.**

Jackson's reliance on these coordinated falsehoods constituted joint participation with state actors and deprived Plaintiff of his Fourth and Fourteenth Amendment rights.

**136.**

Martinelli, Helmer and Whitesell acted under color of law through joint participation and conspiracy with Jackson.

**137.**

As a direct result, Plaintiff was unlawfully seized, arrested, prosecuted, and damaged.

## COUNT VII
## (False Arrest And False Imprisonment – under Georgia Law)
## (Against Jackson, Martinelli, Helmer and Whitesell)

**138.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**139.**

Defendants intentionally and unlawfully restrained Plaintiff without probable cause in initiating and pursuing criminal proceedings against Plaintiff.

**140.**

Defendants are liable under Georgia law.

**COUNT VIII**
**(Malicious Prosecution – under Georgia Law)**
**(Against Jackson, Martinelli, Helmer and Whitesell)**

**141.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**142.**

Defendants acted with malice and without probable cause in initiating, causing, and pursuing criminal proceedings against Plaintiff.

**143.**

The proceedings terminated in Plaintiff's favor.

**144.**

Defendants are liable under Georgia law.

**COUNT IX**
**(Abuse of Process)**
**(Against Jackson, Martinelli, Helmer, and Whitesell)**

**145.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**146.**

Jackson, Martinelli, Helmer and Whitesell misused legal process, including the use of fabricated reports and evidence to cause the Plaintiff to be arrested,and interfere with Plaintiff's custodial rights.

**COUNT X**
**(Intentional Infliction of Emotional Distress)**
**(Against Jackson, Helmer, Whitesell, and Martinelli)**

**147.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**148.**

As shown above, the intentional and reckless conduct of these Defendants was so extreme and outrageous, and beyond all possible bounds of decency, that they sought to fabricate criminal charges against Plaintiff to have him arrested and interfere with his custodial rights.

**149.**

No reasonable person could have been expected to endure such conduct.

**150.**

By engaging in the above-described conduct, Defendants' actions caused Plaintiff severe emotional distress, humiliation, and reputational damage in an amount to be decided by a jury.

**COUNT XI**
**(Slander and Slander Per Se)**
**(Against Martinelli, Helmer, and Whitesell)**

**151.**

Plaintiff incorporates paragraphs 1 to 91, as if fully set out herein.

**152.**

Following and leading up to Plaintiff's arrest, these Defendants repeatedly defamed Plaintiff by accusing him to the public at large, to the police, and other parents, as well as his children's school, of being drunk and DUI while watching his and other children.

**153.**

These Defendants made these defamatory statements knowingly and negligently, so as to paint the Plaintiff in a bad light and to falsely accuse him of crimes, so as to harm his good name and reputation.

**154.**

For example on the day following Plaintiff's arrest, November 3, 2024, in a continued effort to keep Plaintiff from the children, Whitesell and Helmer falsely accused Plaintiff of a crime, being drunk, alleged he was unable to see the children due to child endangerment, and not having a driver's license. They alleged this to Miriam Chaibi, Forsyth County Sheriff Deputy, in order to interfere with Plaintiff's custody of the girls, and to embarrass him in front of all the other parents during a scheduled cheer event. Plaintiff had to individually overcome the three separate false allegations and Deputy Chaibi had to consult with her supervisor at Forsyth County Sherriff's Department on two-three different occasions to establish that Plaintiff

indeed had his license and was able to drive, that Plaintiff indeed had custody of the minor children, and that Plaintiff was not restricted from obtaining the minor children due to the child endangerment citations he received the previous day, and that Plaintiff was not drunk.

**155.**

Following these slanderous statements by these Defendants, Plaintiff has been shunned by the community and the parents of his children's friends.

**156.**

As shown above, these statements were intentional and calculated to paint the Plaintiff in a false light, of being a drunk and DUI, and not someone who should associate with their children and families.

**157.**

Plaintiff has suffered actual damages from this loss of reputation, as local police interfered with his custody of his children, other parents refuse to talk to him, and have created legal documents to further defame him based on these slanderous accusations by these Defendants.

**158.**

In addition, because Plaintiff was falsely accused of multiple crimes, no actual damages are necessary, as these constitute slander per se.

**WHEREFORE**, Plaintiff prays that this Court:

A. holds a trial by jury upon all of the issues so triable;

B. awards compensatory, special, and punitive damages to Plaintiff and against Defendants, in their individual capacities, in an amount to be proven at trial;

C. awards attorneys' fees and costs of litigation under 42 U.S.C. § 1983;

D. taxes the costs of this action against Defendants; and

E. provides such other and further relief as this Court may deem proper.

**Jury Demand**

Plaintiff herein demands a trial by jury of all issues in this action.

Dated this 31st day of October 2025.

**PANKEY & HORLOCK, LLC**

By: */s/ Larry A. Pankey*
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone: 770-670-6250
Facsimile: 770-670-6249
LPankey@PankeyHorlock.com

**CERTIFICATION OF FONT SIZE**

Pursuant to Local rule 5.1(C) of the Local Rules of the United States District Court for the Northern District of Georgia, I, Larry A. Pankey, of Pankey & Horlock, LLC, attorney for Plaintiff, Ian Tod Peters, hereby certify that the foregoing **Complaint** is typewritten in MS Word using Times New Roman font, fourteen (14) point type.

Dated this 31st day of October 2025.

**PANKEY & HORLOCK, LLC**

By: */s/ Larry A. Pankey*
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IAN TOD PETERS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FORSYTH COUNTY DEPUTY SHERIFF, GRACE C. JACKSON; FORSYTH COUNTY SHERIFF, RON FREEMAN; MARTINELLI INVESTIGATIONS, INC.; ROBIN MARTINELLI; DOUG MARTINELLI; TATUM HELMER WHITESELL; and WILLIAM WHITESELL,**<br><br>**Defendants.** | : | **Civil Action File No.**<br><br>**Jury Trial Demand** |

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing **Complaint** with the Clerk of Court using the CM/ECF system.

Dated this 31st day of October 2025.

**PANKEY & HORLOCK, LLC**

By: */s/ Larry A. Pankey*
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone: 770-670-6250
Facsimile: 770-670-6249
LPankey@PankeyHorlock.com